## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

### FEBRUARY 1997 SESSION

FILED

March 27, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **LEWIS BOLERJACK,** | ) | |
| | ) | **C.C.A. NO.  02C01-9603-CC-00093** |
| Appellant, | ) | |
| | ) | **GIBSON COUNTY** |
| VS. | ) | |
| | ) | **HON. WIL V. DORAN,** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**THOMAS T. WOODALL**                **CHARLES W. BURSON**
203 Murrell St.                      Attorney General & Reporter
P.O. Box 1075
Dickson, TN  37056-1075             **SARAH M. BRANCH**
        (On appeal)                  Counsel for the State
                                     450 James Robertson Pkwy.
**TOM W. CRIDER**                     Nashville, TN  37243-0493
District Public Defender
107 South Court Square              **CLAYBURN PEEBLES**
Trenton, TN  38382                   District Attorney General
(at trial and of counsel on appeal)  110 S. College St., Suite 200
                                     Trenton, TN  38382


OPINION FILED:_____


**AFFIRMED**


JOHN H. PEAY,
Judge

**O P I N I O N**

The petitioner pled guilty in December 1987 to the first-degree murder of his wife and received a life sentence. He filed a petition for post-conviction relief in June of 1990. The petition was dismissed without a hearing and the petitioner appealed. This Court remanded the cause to the trial court and a hearing was held on August 30, 1995. The petition was subsequently dismissed and the petitioner now appeals that dismissal. He claims that the petition should not have been dismissed because he received ineffective assistance of counsel prior to entering his guilty plea.

The petitioner alleges that he would not have pled guilty to first-degree murder had he received effective assistance of counsel. Specifically, he alleges that his counsel failed to file a motion to suppress, failed to file a motion for a change of venue, failed to explore the defense of self-defense, failed to adequately consult with him, and failed to adequately investigate his case. He also alleges that his guilty plea was entered involuntarily because of his fear of the death penalty, because his counsel allegedly misinformed him as to the amount of time he would have to serve before being eligible for parole, and because his counsel allegedly told him he must agree to everything the judge said at the time of the plea regardless of whether he agreed or not. After a thorough review of the record, we find no merit to any of these allegations and, therefore, affirm the judgment of the court below.

In reviewing the petitioner's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, a petitioner "must show that counsel's representation fell

below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's error the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

To satisfy the requirement of prejudice, he would have had to demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

The petitioner first claims that his counsel was ineffective because he failed to file a motion to suppress the testimony of Holt Shoaf. At the post-conviction hearing, the petitioner testified that prior to the death of the victim, he went to see Shoaf, an attorney in Milan. While in the lobby of Shoaf's office, the petitioner asked who would own his house if something happened to his wife. At the time he asked this question, Shoaf's secretary and another client were present. The petitioner testified at the post-conviction hearing that his counsel should have filed a motion to suppress Shoaf's testimony on the basis of attorney-client privilege. Dwight Hawks, the petitioner's defense counsel, testified at the hearing that he had done extensive research on the subject and decided that the privilege, if one at all, had been destroyed by the presence of a third person.

The post-conviction court found that "the information under consideration was conveyed to Attorney Holt Shoaf in the presence of a third party and in view of the fact that it could have been construed as being a statement of intention to commit a future crime, it was thus not privileged." We accept this finding of fact because nothing in the record preponderates against it. We also accept the court's conclusion of law with

3

regard to the attorney-client privilege. The presence of a third person destroys the privilege. See Smith County Educ. Ass'n v. Anderson, 676 S.W.2d 328, 333 (Tenn. 1984). This issue is without merit.

The petitioner next contends that his counsel was ineffective because he did not file a motion for a change of venue. The petitioner testified that the death of his wife had generated some publicity in his county and that some articles had appeared in the local newspaper. Mr. Hawks testified that he had explored this subject thoroughly and determined that such a motion was unlikely to be granted, but that in any case, such a motion may not have been in the petitioner's best interest. Mr. Hawks testified that had the motion been granted, the trial would likely have been moved to nearby Crockett County, which has a reputation for imposing the death penalty. Additionally, Mr. Hawks testified that Crockett County has a smaller population of people of the same race as the petitioner. He further testified that he felt like the petitioner would fare better in Gibson County where the petitioner was known, where he (Mr. Hawks) was familiar, and where the jury pool was more familiar as well. The post-conviction court found that Mr. Hawks' decision not to seek a change of venue was a strategic one that he made based on the factors listed above. We agree. "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). This issue is without merit.

The defendant next contends that his counsel was ineffective for not exploring the defense of self-defense. At the post-conviction hearing, Mr. Hawks testified that he and the petitioner had discussed the possibility of using self-defense as a defense to the first-degree murder charge. However, Mr. Hawks determined that a jury would not likely believe this defense because the victim had been shot in her left shoulder with a

4

shot gun. Mr. Hawks testified that he tried to perform a reenactment of the victim's death, but that the physical evidence was inconsistent with a weapon struggle as the petitioner had suggested. Furthermore, the entry wound on the victim was large and there was no presence of powder, an indication that the victim had not been shot at close range. Mr. Hawks also testified that the evidence showed that after she was shot, the victim tried to escape by running down the street. The evidence further showed that the petitioner then shot his wife a second time with a second weapon. The post-conviction court concluded that "Mr. Hawks was correct in assuming that the likelihood of convincing an impartial jury that such a wound was administered in self-defense was remote." We agree with the trial court's finding; Mr. Hawks fully investigated the theory of self-defense. This issue is without merit.

The petitioner next alleges that Mr. Hawks failed to adequately consult with him and failed to adequately investigate his case. He specifically alleges that Mr. Hawks failed to conduct forensic tests on the victim's wounds and that he failed to interview potential witnesses. From the record of the post-conviction hearing, it is clear that Mr. Hawks spent an extraordinary amount of time working on this case. He testified that he had numerous conferences with the petitioner. Additionally, Mr. Hawks employed the services of a law professor at the University of Memphis School of Law as well as the services of Beth Bates, a lawyer in Mr. Hawks' office. It is quite obvious that Mr. Hawks devoted more than adequate time to the petitioner's case.

As for the alleged lack of forensic testing, the post-conviction court found that while no independent experts were hired to study the victim's wounds, there was no need to do so because other evidence sufficiently demonstrated that the petitioner had intentionally shot the victim. We find nothing in the record that preponderates against this finding by the court. As for the alleged failure to interview witnesses, Mr. Hawks testified

that all witnesses were spoken to by someone who was working on the case with him. Regardless, in order for the petitioner to prevail on this issue, he must have presented these witnesses at his post-conviction hearing. No court can be expected to guess what a witness' testimony may have been had he or she testified. Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). These issues are without merit.

The petitioner's final contention is that his counsel erroneously informed him about the amount of time he would have to serve before he could be eligible for parole. He further complains that his counsel instructed him at the entry of the guilty plea to agree with everything that the judge said regardless of whether he agreed or not. At the post-conviction hearing, the petitioner testified that he had thought he would only have to serve twelve to fifteen years before becoming eligible for parole. However, Mr. Hawks testified that he had called the parole board and that he remembered being told that the petitioner would have to serve between twenty-six and thirty-three years before being eligible for parole. He further testified that he had relayed these numbers to the petitioner. The post-conviction court found that Mr. Hawks and the trial judge who accepted the petitioner's plea fairly and accurately advised the petitioner of the ramifications of accepting a life sentence. Again, we find nothing in the record to preponderate against this finding.

As to whether the petitioner was not given an opportunity to give his own answers at the guilty plea, the post-conviction court found no merit to this argument. The guilty plea transcript reveals that the petitioner was read all his rights and given an opportunity to respond. Additionally, the petitioner was asked twice about his satisfaction with Mr. Hawks' representation, and each time the petitioner said he was satisfied. The post-conviction court found that the petitioner's plea was entered knowingly, voluntarily, and intelligently, and with full and complete understanding of his rights. This issue is

without merit.

Therefore, after a thorough review of the record, we find that the petitioner did not receive ineffective assistance of counsel and thus affirm the judgment of the court below.

_____
                                    JOHN H. PEAY, Judge

CONCUR:


_____
JOE B. JONES, Judge


_____
JOE G. RILEY, Judge

7